UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUGH DAREN HALL,

    Plaintiff,

v.                                                                  Case No: 8:22-cv-914-KKM-AAS

TARGET CORPORATION,

    Defendant.
_____

## ORDER

Hugh Daren Hall slipped walking into Target on a rainy day. Based on that fall, Hall sued Target Corporation for negligence. Target now moves for summary judgment based on the lack of actual or constructive notice of the slip hazard. Because a genuine dispute of material fact exists as to constructive notice, Target's motion for summary judgment is denied in part.

### I. BACKGROUND

Hall slipped and fell walking into Target on a rainy morning in 2021. Statement of Facts (Doc. 50) ¶ 3. Footage from a security camera captured the incident and thirty minutes leading up to it. Surveillance Video (Doc. 63). The front of the store includes several feet of carpet along the entrance, and white linoleum through the rest of the

entryway aisle. *Id.* Carpet also runs along the left side of the video frame, where carts are stacked in several rows behind an aisle of shelves. *Id.* For thirty minutes prior to Hall's fall, the video shows Target employees wiping down carts on the carpeted floor inside the entrance, and then staging them on the linoleum floor as customers walked past. *Id.* at 10:04:57–10:35:10.[1] Employees used small rags and larger towels. *Id.* One employee appeared to wring his rag out into the trash. *Id.* at 10:17:50; 10:19:10; 10:20:35; 10:23:15. Another sprayed her rag with cleaner before using it. *Id.* at 10:32:10. Customers then retrieved carts either from where employees staged them or from the carpeted cart stall. *Id.* One cart in particular was taken by a customer from the carpeted area eighteen minutes before Hall entered the store, and was then abandoned at the top of the frame next to the aisle of shelves, where it sat for around nine minutes. *Id.* at 10:16:45–10:17:00; 10:25:50. After this abandoned cart was moved, at least thirteen people walked over the area where Hall fell. *Id.* at 10:25:50–10:35:10.

Fifteen minutes prior to Hall's entrance, an employee placed a yellow caution sign on the floor between the cart stall and the entrance aisle. *Id* at 10:20:30. Another employee moved the sign to the middle of the entrance aisle two minutes before Hall entered the store. *Id.* at 10:32:45. Though there are several places of discoloration on the floor—

---

[1] The parties use a clock displayed along the top of the video to timestamp the events in citations. The Court uses the same convention.

2

perhaps reflections from the overhead lights—no puddle or spill is clearly visible on the video at any time.

Hall walked into the store and immediately turned left toward the customer service desk to pick up an online order. Statement of Facts ¶ 3. Upon remembering that he needed to buy another item, he turned back and walked up the entrance aisle, passing the caution sign. *Id.* At the top of the video frame, he slipped and fell on his back. Surveillance Video at 10:35:20. According to his deposition testimony, the back of his shorts and shirt were wet from the substance he slipped on. Hall Dep. (Doc. 53-4) at 90:10–16. He also testified that the substance was clear, not streaked or muddy, and he assumed it was rainwater. *Id.* at 99:23–24; 100:3.

On March 29, 2022, Hall filed suit in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, claiming that he was injured as a result of Target's negligent failure to maintain its premises. Compl. (Doc. 1-1). Target removed the case to this Court. Notice of Removal (Doc. 1). Target now moves for summary judgment. MSJ. (Doc. 45).

## II.  LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact

3

is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

### III. ANALYSIS

To sustain a negligence claim under Florida law, a plaintiff must establish:

(1) the defendant owed a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) the defendant failed to conform to that duty; (3) there is a reasonably close causal connection between the nonconforming conduct and the resulting injury to the claimant; and (4) some actual harm.

*Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023) (internal quotation marks and alterations omitted) (quoting *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007)).

Under Florida's transitory foreign substance law, "[i]f a person slips and falls on a transitory foreign substance in a business establishment," he must also prove that "the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." § 768.0755(1), Fla. Stat. "Constructive knowledge may be proven by circumstantial evidence showing that" either "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition" or "[t]he condition occurred with regularity and was therefore foreseeable." *Id.* Though the transitory foreign substance statute was passed in 2010, "Florida courts . . . long recognized the requirement at common law" prior to a 2002 statute revoking it, so state caselaw prior to 2002 or after 2010 is informative. *Sutton*, 64 F.4th at 1169 n.1.

5

Target argues for summary judgment based only on notice, not on the traditional negligence elements. Hall responds that the evidence shows a genuine dispute of material fact as to whether Target had both actual and constructive notice.

### A. Actual Notice

A business owner has "actual knowledge" of a dangerous condition when the owner or one of its agents knows of or creates the dangerous condition. *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001). Target argues no evidence supports either that an employee knew of or caused the slippery floor. But Hall claims that Target employees created the dangerous condition. Hall's theory is that when Target employees wiped the carts, they failed to completely dry them, so the carts were still dripping wet. Resp. to MSJ. (Doc. 53) at 2. Then, one of the carts (either the "abandoned cart" or another one) dripped water onto the linoleum floor where he slipped. *Id.* at 2–3. Hall points to the deposition testimony of two Target employees and himself, but none establishes that the carts were wet. *Id.* at 11.

First, Hall testifies that the abandoned cart was dripping wet, but as he acknowledges, the cart was moved ten minutes before he got to Target, so he has no firsthand knowledge as to whether it was wet. Hall Dep. at 117:11–14. He can only speculate that because it was raining, employees were wiping carts down, and a customer swapped it for another cart, the abandoned cart must have been wet. *Id.* at 108:3–12, 24–

6

25; 109:1–6; 113:9–114:8. And the same goes for the employee depositions. The assistant store manager testified that it was Target's practice to wipe down carts "to elevate the customer experience," and agreed that it also probably made the store safer. Oswald Dep. (Doc. 53-10) at 24:3–8. He never testified that he saw any wet carts prior to Hall's fall, and explains that he only came over to write up an incident report after Hall slipped. *Id.* at 7:18–25; 8:20–9:16; *see generally id.* And the other employee testified that she walked up to the front of the store and saw Hall lying on the ground. Marrillia Dep. (Doc. 53–5) at 7:22–8:10. She also testified that she wiped carts down after Hall's fall, but that another employee was wiping them down before the fall, and she never says she saw water on the abandoned cart or any other cart prior to Hall's fall. *Id.* at 9:7–18. She agreed that sometimes carts were not fully dried, resulting in rainwater dripping on the floor, but explained that "Covid was the only reason we were wiping down carts to begin with." *Id.* at 11:19–12:13.

  All of this amounts to nothing more than speculation. The Florida Supreme Court rejected a similar theory in *Food Fair Stores, Inc. v. Trusell*, 131 So. 2d 730 (Fla. 1961). There, a customer slipped on a piece of lettuce in a supermarket. *Id.* at 731. The customer presented an affidavit from an employee of the supermarket, who explained that bagboys took shopping carts from the checkout counter to a staging area, that the bagboys were supposed to remove debris, like pieces of lettuce or paper, from the carts but often failed to

7

do so, and that the debris often fell from the carts to the floor. *Id.* at 732. The Third District Court of Appeals ruled that the affidavit created a genuine dispute of material fact and reversed the trial court's grant of summary judgment. The Florida Supreme Court reversed, holding that "a jury could not reach a conclusion imposing liability on the petitioner without indulging in the prohibited mental gymnastics of constructing one inference upon another inference in a situation where, admittedly, the initial inference was not justified to the exclusion of all other reasonable inferences." *Id.* at 733. The affiant's statement that "in the past 'sometimes loose leaves would fall from the buggies to the floor' " was not enough to show "that in the instant case the loose leaves dropped from a buggy being pushed by an employee" to create the hazardous condition. *Id.*

Same here. Hall puts forward evidence that wet carts are slip hazards, that a wet cart could have dripped to cause his fall, and that sometimes Target employees did not fully dry the carts, but he puts forward no evidence that there was a wet cart to begin with. He cannot survive summary judgment on this level of speculation. *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (explaining that a reasonable jury cannot conclude a fact if it is based on "only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation" (quotation omitted)); *see also Berbridge v. Sam's E., Inc.*, 728 F. App'x. 929, 934 (11th Cir. 2018) (per curiam) (applying *Twin Oaks* to hold that "an inference must be reasonable to defeat a motion for

8

summary judgment"). Thus, Target is entitled to summary judgment on an actual notice theory.

### B. Constructive Notice

Constructive notice is a different story. To prove constructive notice, Hall must show either that the dangerous condition existed for a sufficient length of time that Target should have known of it or that it occurred with enough regularity that it was foreseeable. Regarding length of time, "at least fifteen to twenty minutes" is sufficient to prove constructive notice. *Sutton*, 64 F.4th at 1169 (quoting *Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 864 (Fla. 3d DCA 1972)). Where a surveillance video does not show a clear moment when the hazard appeared, "[a] reasonable jury could infer from the absence of a clear moment" that it was on the floor prior to the start of the video. *Id.* at 1172.

Here, the surveillance video shows thirty minutes before Hall fell. While it shows several *potential* causes of a spill, such as the abandoned cart, it does not show a precise moment when the floor became slippery during the twenty minutes before Hall fell. Thus, a reasonable jury could infer that water accumulated on the ground before the start of the video, and therefore Target should have discovered it. Hall survives summary judgment as to constructive notice on this theory.

9

IV.  CONCLUSION

Target succeeds in showing an absence of a genuine dispute of material fact regarding actual notice. But Hall has shown that a reasonable jury could infer constructive notice. Accordingly, the following is **ORDERED:**

1. Target's motion for summary judgment (Doc. 45) is **GRANTED IN PART** and **DENIED IN PART**.

2. Hall's request for oral argument on this motion is **DENIED** as moot.

**ORDERED** in Tampa, Florida, on July 21, 2023.

*[signature]*
Kathryn Kimball Mizelle
United States District Judge